UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLAN D. SCHUBERT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 23-3509 (CRC) |
| FEDERAL BUREAU OF PRISONS, | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION**

Federal inmate Allan D. Schubert requested records under the Freedom of Information Act ("FOIA") concerning two individuals that he suggested are employees of the Federal Bureau of Prisons ("BOP"), filing one request in July 2022 and the other in November 2022. In both cases, BOP responded by neither confirming nor denying the existence of such records, commonly known as a *Glomar* response. After Schubert filed a *pro se* complaint asserting his right to the documents, BOP filed a partial motion to dismiss and a motion for summary judgment and Schubert cross-moved for summary judgment.

Because Schubert failed to appeal BOP's rejection of his November 2022 FOIA request and, therefore, did not exhaust the required agency process, the Court will grant the partial motion to dismiss as to the November 2022 request. And because BOP has properly justified its *Glomar* response under FOIA Exemption 6, the Court will grant BOP's summary judgment motion as to the July 2022 FOIA request.

I.  **Background**

Schubert is serving a 180-month sentence for possessing a firearm as a felon. United States v. Schubert, 694 F. App'x 641, 643 (10th Cir. 2017). In July 2022, Schubert lodged a FOIA request with BOP seeking:

> (1) "[a]ny records citing the locations of assignment/employment while employed by the Bureau of Prisons of JACQUELINE SNYDER – (currently MAY-JUNE 2022 @ Yazoo Fed. Corr. Complex)"; (2) "[a]ny records of complaint/grievance filed against JACQUELINE SNYDER while employed by the B.O.P."; (3) "[a]ny records of Internal Affairs investigation or Ethical investigation, or any other investigations initiated against JACQUELINE SNYDER while employed by the B.O.P."; and (4) "[a]ny and all records relating to the reason why JACQUELINE SNYDER was removed/relocated/or transferred out of Big Sandy United States Penitentiary located in the State of Kentucky."

Decl. of Kara Christenson ("Christenson Decl.") ¶ 12 (quoting Ex. C). The request did not indicate that Schubert had received a waiver from Ms. Snyder to view the documents. Def's Stmt. of Facts ("Stmt.") ¶¶ 6–7. In August 2022, BOP refused to confirm or deny the existence of responsive records and denied the request pursuant to FOIA Exemptions 6 and 7(C). Id. ¶ 13 (citing Ex. D). Schubert appealed to the Department of Justice's Office of Information Policy ("OIP"), see Christenson Decl., Ex. E, which affirmed BOP's response in November 2022. Id. ¶ 14 (citing Ex. F).

In November 2022, Schubert submitted a second FOIA request for:

> records on an employee named, "Rosario," including: (1) "[t]he full name and identification of correctional officer ROSARIO that worked at Yazoo medium (now classified as LOW-2) in Yazoo City, Mississippi in the years of 2019 and 2020. (Male of Spanish descent)"; (2) "[t]he records that identify any other Bureau of Prisons that ROSARIO worked at, with their proper location identified"; (3) "[a]ny and all records of complaint/grievance filed against ROSARIO while employed by the B.O.P."; (4) "[a]ny

2

> records of Internal Affairs investigation [sic], Ethical investigations, or any other investigations conducted against ROSARIO while employed by B.O.P."; (5) "[a]ny records that identify the location and position, most up-to-date, of ROSARIO"; and (6) "[a]ny and all bond or insurance policies that cover any liability claims against ROSARIO while employed by the B.O.P."

Christenson Decl. ¶ 32 (quoting Ex. G). Schubert did not include a waiver from Rosario. Stmt. ¶ 13. This request was sent to the Office of Personnel Management and forwarded to Yazoo Correctional Institute, a BOP prison, rather than to BOP's director in Washington, D.C., as BOP policy requires. Christenson Decl. ¶ 29. The request was rejected on the basis that it had been improperly submitted. Id. ¶ 31. Following Schubert's appeal to OIP, id. ¶ 32, BOP "agreed to receive Schubert's request directly from OIP in an effort to be responsive." Id. ¶¶ 34-35. On March 1, 2024, BOP again refused to confirm or deny the existence of responsive records and denied the request pursuant to FOIA Exemptions 6 and 7(C). Id. ¶ 35 (citing Ex. I). BOP informed Schubert of his right to appeal the decision to OIP within 90 days. Id. OIP separately sent Schubert a letter on March 6, 2023, explaining why his appeal had been rejected and explaining that he could appeal BOP's decision concerning the substance of his request. Stmt. ¶ 27. Schubert did not appeal and instead filed this lawsuit on October 30, 2023. Christenson Decl. ¶ 32 (attesting that "OIP has no record" of an appeal from Schubert of "BOP's March 1, 2023 Determination Letter").

## II. Legal Standards

### A. Summary Judgment on FOIA Exemptions

Summary judgment may be granted when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is the typical mechanism for determining whether an agency has

met its FOIA obligations. See, e.g., Jud. Watch, Inc. v. CFPB, 60 F. Supp. 3d 1, 6 (D.D.C. 2014) (citation omitted).

To obtain summary judgment after invoking a FOIA exemption, an agency must first show that the material falls under one of nine enumerated exemptions. Larson v. Dep't of State, 565 F.3d 857, 861 (D.C. Cir. 2009) (citation omitted). Agencies can do so by providing sufficiently detailed declarations. Id. at 863. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Jud. Watch, Inc. v. DOD, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal quotation marks omitted) (citation omitted). Because the primary purpose of FOIA is disclosure, exemptions are construed narrowly. DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (citation omitted). Further, the agency must make a "focused and concrete" showing that disclosing the withheld records would cause foreseeable harm. Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 370 (D.C. Cir. 2021); 5 U.S.C. § 552(a)(8)(A)(i)(I).

B. *Glomar* Responses

Courts have recognized that in "certain cases, merely acknowledging the existence of" records responsive to a FOIA request "would itself 'cause harm cognizable under [a] FOIA exception.'" People for the Ethical Treatment of Animals v. NIH, 745 F.3d 535, 540 (D.C. Cir. 2014) (citation omitted) (alteration in original). In these situations, an agency may issue what is known as a "*Glomar* response," refusing to confirm or deny the existence of any responsive records. Id. A *Glomar* response is appropriate "if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." Id. (citation omitted). Courts can rely on agency declarations in evaluating a *Glomar* response. Id. BOP has filed such a declaration here. See Christenson Decl.

### III. Analysis

A. <u>BOP's Partial Motion to Dismiss</u>

BOP argues first that Schubert's claim based on the November 2022 FOIA Request should be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies. Def's Mot. at 12–14. The Court agrees.

Before bringing a FOIA suit, a requester must exhaust the agency's internal appeals process. See <u>Hidalgo v. FBI</u>, 344 F.3d 1256, 1259 (D.C. Cir. 2003). The Court may take judicial notice of agency filings that relate to exhaustion in response to a motion to dismiss. See <u>Bigwood v. Defense Intelligence Agency</u>, 699 F. Supp. 2d 114, 117 (D.D.C. 2010). "[E]ven though they are not jurisdictional, FOIA's exhaustion requirements are not mere formalities to be routinely ignored, some unseemly morass of bureaucratic red tape. Instead, exhaustion is regarded as a core component of orderly procedure and good administration—a doctrinal safeguard that preserves agency authority and judicial efficiency." <u>Haleem v. DOD</u>, No. 23-cv-1471 (JEB), 2024 WL 230289, at *5 (D.D.C. Jan. 22, 2024) (cleaned up). Exceptions exist where the "purposes and policies" underlying the exhaustion requirement "have been served." <u>Wilbur v. CIA</u>, 355 F.3d 675, 677 (D.C. Cir. 2004). In practice, "an untimely administrative appeal" may warrant an exception because such it "still pragmatically satisfies the purposes of the administrative exhaustion doctrine so long as the agency chooses to accept and process that appeal and decide the issues presented on the merits." <u>Toensing v. U.S. DOJ</u>, 890 F. Supp. 2d 121, 136 (D.D.C. 2012). But "plac[ing] the substance of the [agency's] response before" the internal appeals body remains necessary. <u>Hidalgo</u>, 344 F.3d at 1259; see also <u>Toensing</u>, 890 F. Supp. 2d. at 136.

Here, Schubert failed to exhaust the appeal and, therefore, follow agency process for the November 2022 FOIA request. When Schubert appealed the initial rejection for improper submission, see Christenson Decl. ¶¶ 29, 31, OIP informed him that BOP would handle his request and informed him of his right to appeal any substantive decision BOP made. Stmt. ¶¶ 20, 22–24. And when BOP issued its *Glomar* response, it also indicated that he could appeal within 90 days under agency policy. Id. ¶¶ 24, 27–29. Schubert did not appeal within that window—or at all. He chose instead to file the complaint in this case in October 2023. That distinguished this case from Wilbur, where the D.C. Circuit held that because the CIA accepted and reviewed Wilbur's four-years late appeal, the purposes of exhaustion had been served despite the untimeliness of the appeal. See 355 F.3d at 677. Here, OIP, the reviewing body, has not had the opportunity to consider the *Glomar* response BOP issued, as Schubert "bypass[ed] the administrative review process" and did not "pursue[] it to its end." Id. Thus, dismissal of the November 2022 FOIA claim is warranted.

Schubert, in his opposition to the motion to dismiss, claims that he never received notice of his appeal rights. Pl.'s Cross-Motion at 8. But based on his pleadings, at a minimum, he appears to have known that his BOP request had been rejected, given that he filed a complaint seeking the documents. Further, his complaint indicates that he received OIP's March 6, 2023, letter explaining his right to appeal the BOP's substantive decision. See Compl. at 5 (acknowledging that OIP denied his appeal of the initial request); see also Pl.'s Opp'n at 8 (acknowledging OIP's rejection and referring to it as improper). The record thus suggests that Schubert was well aware of his appeal obligations. And even had he not received either notice of his appeal rights, dismissal would be consistent with the core purposes of the exhaustion requirement: to allow the Court to review the case with "the benefit of the agency's experience

6

and expertise" and to avoid "cut[ting] off the agency's power to correct or rethink initial misjudgments or errors." Hidalgo, 344 F.3d at 1259, 1260 (citations omitted).

B. Summary Judgment

Turning to the July 2022 FOIA request, the Court agrees with the government that BOP properly grounded its *Glomar* response in FOIA Exemption 6.[1] The Court will, therefore, grant the government's summary judgment motion on this issue and deny Schubert's cross-motion.[2]

1. *BOP did not waive its* Glomar *response*

At the outset, Schubert suggests that BOP's *Glomar* response was waived because the requested information already was in the public record. An agency may issue a *Glomar* response where acknowledging the existence or nonexistence of records would implicate an interest protected by a FOIA exemption. See People for the Ethical Treatment of Animals, 745 F.3d at 540. An agency cannot plausibly justify a *Glomar* response, however, if it has publicly acknowledged the existence of the records requested. See Am. C. Liberties Union v. CIA, 710 F.3d 422, 426–27 (D.C. Cir. 2013). Schubert suggests that Office of Personnel Management (OPM) regulation 5 C.F.R. § 293.311 supports a finding that BOP had acknowledged the existence of the records in question. See Pl.'s Opp'n at 9. He is mistaken. That regulation makes "available to the public" the names, duty stations, and other personnel information of current and former federal employees contained in files "under the control" of OPM. Id. §

---

[1] If the Court were to reach the merits on the November 2022 request, it would grant summary judgment to BOP based on the same analysis set forth below.

BOP also relied on Exemption 7(C) of FOIA to justify its *Glomar* response. See Def's Mot. at 1. Because the Court determines that Exemption 6 covers the *Glomar* response, it need not and does not reach the applicability of Exemption 7(C).

[2] Although Schubert argues that the government did not defend itself as to the July request and, therefore, his motion should be granted, see Pl.'s Opp'n at 1, 3, that is plainly not the case. See, e.g., Def's Mot. at 9.

293.311(a). Yet it continues that the "[o]ffice or agency will generally not disclose information" that the custodial agency official determines "[w]ould otherwise be protected from mandatory disclosure under an exemption of the FOIA." Id. § 293.311(b)(2). And those are precisely the types of documents at issue here. In any event, even if OPM did disclose these documents, "[d]isclosure by one federal agency does not waive another agency's right to assert a FOIA exemption." Nat'l Sec. Archive v. CIA, 104 F.4th 267, 273 (D.C. Cir. 2024) (cleaned up).

### 2. *BOP Properly Invoked Exemption 6*

BOP grounded its *Glomar* response in FOIA's Exemption 6, which shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6).

To begin, the requested information undeniably falls under the categories protected by the exemption. The "personnel" and "similar files" encompassed by Exemption 6 are "intended to cover detailed Government records on an individual which can be identified as applying to that individual." U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 89-1497, at 11 (1966)). And Schubert's request facially targets government records that apply to an identified would-be federal employee's employment. See Christenson Decl. ¶ 12.

Once it is established that the requested files fall under the protected categories, an agency must show that (a) the requested information implicates a substantial, as opposed to *de minimis*, privacy interest; and, if it does, (b) that the private interest is not overridden by a public interest in disclosure. Bloomgarden v. Nat'l Archives and Recs. Admin., 798 F. App'x 674, 675–76 (D.C. Cir. 2020). But if the FOIA requester fails "to demonstrate a public interest in disclosure," the analysis ends because "'something outweighs nothing every time.'" Kearns v.

FAA, 312 F. Supp. 3d 97, 110 (D.D.C. 2018) (citation omitted).  And although Schubert argues that BOP's choice to not conduct a search for the documents is fatal to its motion, see Pl.'s Opp'n at 2, 4–5, no such search is required when an agency issues a *Glomar* response.  See, e.g., Elec. Priv. Info. Ctr. v. NSA, 678 F.3d 926, 934 (D.C. Cir. 2012).

The "substantial privacy" requirement "is not very demanding." Niskanen Ctr. v. FERC, 20 F.4th 787, 791 (D.C. Cir. 2021) (citation omitted).  And "low-level government employees" especially "have a heightened privacy interest." Insider, Inc. v. U.S. GSA, 635 F. Supp. 3d 1, 4 (D.D.C. 2022) (citing Common Cause v. NRC, 674 F.2d 921, 938 (D.C. Cir. 1982)).  Courts "'generally recognize the sensitivity of information contained in personnel-related files and have accorded protection to the personal details of a federal employee's service.'" Rosenberg v. DOD, 342 F. Supp. 3d 62, 91 (D.D.C. 2018) (quoting Smith v. DOL, 798 F. Supp. 2d 274, 284–85 (D.D.C. 2011)).

Schubert's request seeks government records that identifiably apply to alleged BOP employee "Jacqueline Snyder."  If they exist, responsive records naturally will contain the subject's employment history, "duty stations," and any "investigations and related disciplinary actions." Christenson Decl.  ¶¶ 17-18.  Each of these types of documents trigger privacy interests.  "[A]n employee has at least a minimal privacy interest in his or her employment history and job performance evaluations. That privacy interest arises in part from the presumed embarrassment or stigma wrought by negative disclosures." See People for the Ethical Treatment of Animals v. USDA, No. 06-cv-0930 (RMC), 2007 WL 1720136, at *4 (D.D.C. June 11, 2007) (citation omitted).  Indeed, acknowledgment of the requested investigatory files would "plainly implicate" the alleged employees' "substantial privacy interest[s]." Webster v. FBI, No. 24-cv-387 (CRC), 2025 WL 2144099, at *4 (D.D.C. July 29, 2025) (Cooper, J.).  And any

9

potential revelation concerning a law-enforcement investigation that included them would be foreseeably damaging.  Id. (citing Roth v. DOJ, 642 F.3d 1161, 1174 (D.C. Cir. 2011)).  Even if the subject of an investigation has been cleared of all wrongdoing, "[t]he allegations that may trigger" a law-enforcement investigation can "carry a stigma and can damage a career." McCutchen v. U.S. Dep't of Health and Human Servs., 30 F.3d 183, 187 (D.C. Cir. 1994); cf. Carter v. U.S. Dep't of Com., 830 F.2d 388, 394 (D.C. Cir. 1987) ("[D]isclosure of information identifying a particular [person] as the subject of a dismissed disciplinary proceeding . . . would violate [his or her] substantial privacy interests[.]").  And even if all BOP did was confirm the existence of an employment file, and nothing more, doing so might invite "unwanted intrusions" into Ms. Snyder's privacy.  Niskanen Ctr., 20 F.4th at 791; Nat'l Ass'n of Retired Fed. Empl. v. Horner, 879 F.2d 873, 878 (D.C. Cir. 1989).

  As to the public interest, Schubert pleads none, meaning the clear private interest at stake here is more than sufficient to justify the *Glomar* response.  In the FOIA context, a public interest exists when "disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting DOD v. FLRA, 510 U.S. 487, 497 (1994)).  Conversely, "[i]nformation that reveals little or nothing about an agency's own conduct does not further the statutory purpose[.]"  Beck v. DOJ, 997 F.2d 1489, 1493 (D.C. Cir. 1993).  "[T]o trigger the balancing of public interests against private interests, a FOIA requester must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'"  Boyd v. Criminal Div. of DOJ, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting Nat'l Archives & Recs. Admin. v. Favish, 541 U.S. 157, 172 (2004)).

Schubert has not asserted, much less demonstrated, a public interest in the requested information. He posits that "nothing" about the records "would harm Defendants by any sort of embarrassment, disgrace, or any stigma." Pl.'s Opp'n at 10. But that conclusion adds no "counterweight on the FOIA scale for the court to balance against" the substantial privacy interests at stake. Favish, 541 U.S. at 174–75. Therefore, any privacy invasion is "clearly unwarranted." Horner, 879 F.2d at 875 (citation omitted).

## IV. Conclusion

For the foregoing reasons, the Court will grant BOP's Partial Motion to Dismiss and its Motion for Summary Judgement and deny Schubert's Cross-Motion for Summary Judgment. A separate Order accompanies this opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   August 28, 2025